1 Vanessa R. Waldref
2 United States Attorney
  Eastern District of Washington
3 Ann T. Wick
4 Assistant United States Attorney
  Post Office Box 1494
5 Spokane, WA 99210-1494
6 Telephone: (509) 353-2767

7
                  UNITED STATES DISTRICT
8        FOR THE EASTERN DISTRICT OF WASHINGTON

9
10   UNITED STATES OF AMERICA,

11                    Plaintiff,          Case No.: 4:19-CR-6036-SMJ

12         vs.                            United States' Sentencing
13                                        Memorandum
14   TRENT DREXEL HOWARD,

15                    Defendant.
16

17       Plaintiff, United States of America, by and through Vanessa R. Waldref,
18
19   United States Attorney for the Eastern District of Washington, and Ann T. Wick,
20
21   Assistant United States Attorney for the Eastern District of Washington, submits this
22
     memorandum setting forth the government's position at sentencing.    The
23
24   government recommends that the Court sentence the defendant to a term of
25   imprisonment of 23 years, followed by a life term of supervised release.
26
27
28


Gov.'s Sentencing Memorandum – 1

## **INTRODUCTION**

If the Court accepts the Rule 11(c)(1)(C) Plea Agreement, the Court must sentence Defendant to a prison term of 23 months, followed by a term of supervised release. ECF No. 138. The Court may also impose up to a $250,000 fine, in addition to special assessments under 18 U.S.C. §§ 2259A, 3013, and 3014(a)(4). PSR ¶¶ 269, 272, 274

The United States agrees with the procedural history and offense conduct detailed in paragraphs one through 44 of the initial Presentence Investigation Report (hereinafter "PSR"). ECF No. 142. Neither party filed objections to the PSR; however, Defendant did provide objections to United States Probation and the government. *Inter alia*, Defendant objected to the child pornography image count (PSR ¶ 43), the 5-level enhancement of USSG §4B1.5(b), for repeat and dangerous sex offenders against minors (PSR ¶ 199), and the inclusion of two victim impact statements. The United States submits that these objections should be overruled and notes specifically that 1) the disputed image count is based on reliable information and has no effect on the Guideline calculations or jointly recommended 23-year sentence; 2) the 5-level enhancement is correctly applied and will be addressed further below; and 3) the present case is readily distinguishable from *U.S. v. Burkholder*, 590 F.3d 1071 (9th Cir. 2010), and the victim impact statements in this

case should remain attached to the PSR.  The United States reserves the right to further address Defendant's objections at sentencing.

## **LEGAL ANALYSIS**

The Ninth Circuit has set forth a basic framework which the district courts should follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

(1)    Courts are to begin all sentencing proceedings by correctly determining the applicable sentencing guidelines range, precisely as they would have before *Booker*.

(2)    Courts should then consider the § 3553(a) factors to decide if they support the sentence suggested by the parties.  Courts may not presume that the guidelines range is reasonable.  Nor should the guidelines factors be given more or less weight than any other.  They are simply to be treated as one factor among the § 3553(a) factors that are to be taken into account in arriving at an appropriate sentence.

(3)    If a court decides that a sentence outside the guidelines is warranted, then it must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.

(4)    Courts must explain the selected sentence sufficiently to permit meaningful appellate review.

*United States v. Carty*, 520 F.3d 984, 991-92 (9th Cir. 2008).

## SENTENCING CALCULATION AND IMPOSITION OF SENTENCE

### I. United States Sentencing Guidelines Calculation

"As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

#### A. Offense Level Calculation

The PSR correctly calculated the defendant's total offense level as 43. PSR ¶ 202.

This includes the 5-level enhancement under USSG §4B1.5(b). The enhancement is required where: 1) the defendant's instant offense of conviction is a covered sex crime; 2) neither §4B1.1 nor §4B1.5(a) applies; and 3) the defendant engaged in a pattern of activity involving prohibited sexual conduct. USSG §4B1.5(b). A "covered sex crime" is **(A)** an offense, perpetrated against a minor, under chapters 109A, 110, or 117 of Title 18, United States Code (excluding trafficking in, receipt of, or possession of child pornography, or a recordkeeping offense), or 18 U.SC. § 1591; **or (B)** an attempt or a conspiracy to commit any of these (non-excluded) offenses. USSG §4B1.5 n.2.

"Prohibited sexual conduct" expressly includes "production of child pornography." §4B1.5 n.4(A). A "pattern of activity" requires at least two separate instances of the defendant engaging in prohibited sexual conduct with a minor.

§4B1.5 n.4(B)(i). The instances of prohibited sexual conduct need not have occurred during the course of the instant offense, nor resulted in a conviction. §4B1.5 n.4(B)(ii).

Defendant Howard's instant offense of conviction is a violation of 18 U.S.C. § 2251. This offense is in chapter 110 of Title 18, United States Code, not excluded from the definition of "covered sex crime" cited above, and therefore a "covered sex crime" under USSG §4B1.5(b)(A). Even if one were to take the position that *attempted* production of child pornography is somehow not in chapter 110, a "covered sex crime" nevertheless specifically includes "an attempt or conspiracy" to commit chapter 110 violations, other than the specifically excluded offenses of trafficking in, receipt of, and possession of child pornography, or a recordkeeping offense. USSG §4B1.5 n.2.

No one contends that USSG §4B1.1 or §4B1.5(a) applies.

Defendant repeatedly produced child pornography through the use of his hidden cameras – well over the minimum two occasions required. In the words of the production statute, Defendant used a minor in sexually explicit conduct for the purpose of producing a visual depiction of such conduct. 18 U.S.C. § 2251. There need not be a conviction for this conduct to trigger the enhancement, so it matters not that Defendant pleaded guilty to attempted production of child pornography. What matters is that the conduct occurred twice and constituted "prohibited sexual

conduct" as either an offense described in 18 U.S.C. § 2426(b)(1)(A) or (B), or the "production of child pornography."  USSG §4B1.5 n.4A.

Defendant's objection to the five-level enhancement of §4B1.5(b) should be overruled.

### B.  Criminal History Calculation

The PSR correctly calculated the defendant's criminal history category as Category I.  PSR ¶ 209.

### C.  Advisory Guideline Range

Based upon a total offense level of 43 and a criminal history category of I, the advisory guideline imprisonment range is life.  PSR ¶ 263.  That range adjusted by the statutory maximum is 360 months.  *Id*.

The Guidelines further recommend a life term of supervised release.  USSG § 4B1.5 n.5(A) (recommending the statutory maximum term of supervised release for offenders sentenced under §4B1.5).

## II.  **Departures**

The United States does not recommend a departure from the advisory guideline range.  The United States does recommend, however, a variance in this case, to a sentence of 23 years, consistent with the Plea Agreement.

## III.  **Imposition of a Sentence under 18 U.S.C. § 3553**

### A.  18 U.S.C. § 3553(a) factors

1.    The nature and circumstances of the offense

The nature and circumstances of Defendant's offense warrants a sentence of 23 years, followed by a life term of supervised release. The investigation that led to the discovery of Defendant's sexual interest in minors began with Defendant sharing child pornography videos and images over the internet over the course of several months. PSR ¶¶ 12-14. Federal agents soon discovered that Defendant had been secretly recording videos and images of minors using the bathroom and changing clothes in his residences, with hidden cameras set up to capture the exposed genitalia of the victims. *See* PSR ¶ 20. Fourteen minors were ultimately identified, and there is evidence of an additional, unidentified minor being filmed nude inside a residence through a bedroom window. PSR ¶ 25.

For over a decade, Defendant violated the privacy of and abused the trust of those closest to him, leaving several of his victims with lasting detrimental effects once they learned of Defendant's actions. Many of them described being more "guarded" now, having feelings of being "watched," being "triggered," having panic attacks, and similar. *See e.g.* PSR ¶¶ 48, 59, 63, 65, 69, 75, 77, 79, 86. More than one victim broke down emotionally while speaking with United States Probation regarding the impact Defendant's crime has had on them. *See id*.

Indeed, Defendant's production victims describe some of the same victim impacts as victims of previously identified Series, where the images of their sexual

abuse are continually traded online. And Defendant's distribution of child pornography, including Series victims, to the undercover federal agent is merely a representative sample of what Defendant was making available to the larger peer-to-peer community. So, too, was it merely a representative sample of the files Defendant possessed on the several electronic devices seized from his home. In addition to what Defendant produced, he possessed tens of thousands of child pornography images and videos, many of which the case agent recognized from his years of experience investigating these kinds of cases. PSR ¶ 21. The case agent stopped officially marking files as child pornography when the count reached 30,000; however, based on his entire review, he estimated a total of one million images/videos were located in the forensic data of Defendant's seized devices. PSR ¶ 43.

### 2.    The history and characteristics of the defendant

Defendant's history and characteristics also support a 23-year sentence and life term of supervised release. Although Defendant has zero criminal history points, his known child pornography crimes date back at least to 2008, meaning Defendant engaged in criminal behavior for at least 11 years before being caught. ECF 134. In addition, there is evidence of Defendant seeking out dates with minors while working overseas. PSR ¶ 44. His sexual interest in minors is not limited to an interest merely in visual depictions.

Gov.'s Sentencing Memorandum – 8

Defendant's offense of conviction specifically involved deception, in that he used hidden cameras to capture his illicit footage. Defendant also engaged in a broader life of deception, keeping not only his sexual interest in minors a secret for all those years, but also his relationship(s) with other women, and a bank account the government understands was kept secret from Defendant's wife.[1] The skill with which Defendant lived this sort of double life for so many years is indicative of deeply ingrained criminal thinking and increases the risk Defendant presents to the community.

3. The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment.

Crimes involving the sexual exploitation of a minor child are among the most serious and reprehensible crimes that can be committed. Defendant victimized far more than the 15 minors he recorded, and the 14 more identified by the National Center for Missing and Exploited Children – likely hundreds of victims. A sentence of 23 years, followed by a life term of supervised release, recognizes this, promotes respect for the law, and is just punishment.

---

[1] This is based on banking transfer receipts evidencing the transfer of $20,000 from a bank in Australia to a bank in Russia, with instructions that the funds were to be "collected in person or transferred to personal card(s)." One of the receipts, dated September 3, 2019, further instructed a "possible transfer to a bank within Kazakhstan." Ms. Howard discovered the receipts in Defendant's luggage upon its return to the United States. Discovery Bates Nos. 197 – 197.09.

4. **The need for the sentence imposed to afford adequate deterrence and to protect the public.**

A prison sentence of 23 years and a life term of supervised release protects the public and serves the goal of general and specific deterrence. The public is protected from Defendant's crimes while he is serving a custodial sentence and hopefully beyond, if he is successfully deterred from criminal activity by his sentence and takes advantage of rehabilitative programs and tools offered while in custody and upon release. Such a sentence also puts other offenders on notice of the strict consequences that flow from victimizing our youth.

5. **The kinds of sentences available**

Pursuant to the Rule 11(c)(1)(C) Plea Agreement, if accepted by the Court, the Court may sentence Defendant to a term of prison of no more and no less than 23 years, followed by a term of supervised release of not less than five years. ECF No. 138.

6. **The established sentencing range**

Based upon a total offense level of 43 and a criminal history category of I, the adjusted advisory guideline imprisonment range is 360 months. PSR ¶ 263. The advisory term of supervised release is life. USSG §4B1.5 n.5(A).

7. **The need to avoid unwarranted sentence disparities**

The government's recommended sentence is consistent with similar sentences imposed in the Eastern District of Washington.

1

2

8.    The need to provide restitution to any victims of the offense

3

4

5

Both statute and the Plea Agreement require restitution be paid in an amount of not less than $3,000 per victim.  As of the filing of this Memorandum, the

6

government anticipates requesting an order of restitution reflecting $15,000 payable

7

8

to a total of two Series victims.  Defendant was in possession of one image of the

9

first Series; that victim is requesting $5,000 in restitution.  Defendant was in

10

possession of 43 images of the second Series; that victim is requesting $10,000 in

11

12

restitution.  There is evidence that Defendant distributed the aforementioned images,

13

in addition to possessing them.

14

15

B.    Application of the Guidelines in Imposing a Sentence under 18 U.S.C. § 3553(b)

16

17

The guidelines, formerly mandatory, now serve as one factor among several

18

that courts must consider in determining an appropriate sentence.  *Kimbrough v.*

19

20

*United States*, 552 U.S. 85, 90 (2007).  It remains, however, that "the Commission

21

fills an important institutional role: It has the capacity courts lack to base its

22

23

determinations on empirical data and national experience, guided by a professional

24

staff with appropriate expertise." *Id*. at 108-09 (internal quotation marks omitted).

25

Thus, "the Commission's recommendation of a sentencing range will 'reflect a

26

27

rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Id*.

28

(quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)).

Gov.'s Sentencing Memorandum – 11

The government acknowledges that a recommendation of 23 years represents a variance in this case. The government submits that the variance is supported by the facts and circumstances of this case – including Defendant's anticipated age upon his eventual release from prison, and policy in favor of consistency in sentencing, at least within the Eastern District of Washington. The government further submits that the government's recommendation that the 23-year prison term be followed by a life-term of supervised release presents a complete sentence that satisfies the goals of sentencing.

### IV.    $5,000 Special Assessment of the JVTA

The United States seeks the imposition of a $5,000 special assessment pursuant to the Justice for Victims of Trafficking Act (JVTA). Assessments paid under the JVTA are deposited into the Domestic Trafficking Victims Fund for grants to enhance programs that assist trafficking victims and provide services for victims of child pornography.

Under the JVTA, the Court "shall assess an amount of $5,000 on any non-indigent person or entity convicted of an offense under ... (3) chapter 110 (relating to sexual exploitation and other abuse of children)." 18 U.S.C. § 3014(a)(3). In imposing a JVTA assessment, the non-indigency of a defendant is the governing deliberation and the statute does not require the court to consider the factors enumerated in 18 U.S.C. § 3572 with respect to the entry of a non-JVTA fine. *See*

*generally* 18 U.S.C. § 3014 (no reference to or requirement upon the court to evaluate the 18 U.S.C. § 3572 factors when imposing a JVTA assessment).

Whether a defendant is non-indigent for the purposes of a JVTA assessment is determined not by a static snapshot of a defendant's financial condition at the time of sentencing, but instead should be based on considerations of a defendant's current and future financial condition.

> [A] district court must resolve two basic questions in assessing the defendant's indigency: (1) Is the defendant impoverished now; and (2) if so, does the defendant have the means to provide for himself so that he will not always be impoverished?
> …
>
> Because the defendant's obligation to pay persists for at least twenty years after his sentencing, it would make little sense for the district court to consider only the defendant's financial condition at the time of sentencing. That snapshot in time may not accurately represent the defendant's condition five, ten, or twenty years after sentencing. Rather, the defendant's employment prospects and earnings potential are probative of his ability to pay the assessment—and are fair game for the court to consider at sentencing.

*United States v. Shepherd*, 922 F.3d 753, 758 (6th Cir. 2019)

In this matter, Defendant is non-indigent for the purposes of imposing a JVTA assessment. Although not singularly dispositive, the government first notes that Defendant's counsel is retained, not appointed. *See Shepherd*, 922 F.3d at 759 (fact that defendant is represented by appointed counsel is "probative but not dispositive" of indigence under § 3014, because indigence is not the standard for appointment of

Gov.'s Sentencing Memorandum – 13

counsel). Second, Defendant had a very high-paying job for many years; he informed United States Probation that he earned $160,000 to $170,000 per year before being terminated in 2019. PSR ¶ 259. Although Defendant reported he no longer has any money in savings (PSR ¶ 259), the government has been informed of two retirement accounts not reflected or attributed to Defendant in the PSR. It is the government's understanding that Defendant has an account through the carpenter's union in the amount of $9,600, as well as an IRA account set up through a financial planner. It is further the government's understanding that Defendant gave his sister, Ms. Montalvo, power of attorney for these accounts on or about December 1, 2020. Lastly, the government submits that Defendant is not indigent for purposes of the JVTA due to his expected Bureau of Prisons financial responsibility earnings during his period of incarceration.

A typical judgment imposing a monetary penalty requires a defendant to participate in the Bureau of Prison's Inmate Financial Responsibility Program and pay $25 per quarter towards any outstanding monetary penalty. With 23 years of incarceration, less two years for approximate time already served, the Defendant could pay $2,100 through the IFRP by the time he is released to supervised release.

Rather than request a fine, the government respectfully requests the Court impose the JVTA special assessment.

Gov.'s Sentencing Memorandum – 14

## V.     $50,000 Special Assessment of the AVAA

The United States seeks the imposition of a $28,000 assessment pursuant to the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 (AVAA).    Assessments paid under the AVAA are deposited into the Child Pornography Victims Reserve, which funds are available to victims in partial or full satisfaction of their restitution claims. 18 U.S.C. §§ 2259B(b), 2259(d).  "It is the intent of Congress that victims of child pornography be compensated for the harms resulting from every perpetrator who contributes to their anguish. Such an aggregate causation standard reflects the nature of child pornography and the unique ways that it actually harms victims." AVAA, PL 115-299, December 7, 2018, 132 Stat 4383.

Under the AVAA, the Court shall assess not more than $50,000 on any person convicted of production of child pornography.   18 U.S.C. § 2259A(a)(1).   This assessment is "in addition to any other criminal penalty, restitution, or special assessment authorized by law." § 2259A(a).   Imposition of an AVAA assessment "does not relieve a defendant of, or entitle a defendant to reduce the amount of, any other penalty by the amount of the assessment."  18 U.S.C. § 2259A(2).

In determining the amount of AVAA assessment to impose, the Court shall "consider the factors set forth in sections 3553(a) and 3572."  18 U.S.C. § 2259A(c). These factors include, in addition to the 3553(a) factors discussed above:

> (1) The defendant's income, earning capacity, and financial resources;

Gov.'s Sentencing Memorandum – 15

(2) The burden that the fine will impose upon the defendant, any person who is financially dependent on the defendant, or any other person (including a government) that would be responsible for the welfare of any person financially depending on the defendant, relative to the burden that alternative punishments would impose;

(3) Any pecuniary loss inflicted upon others as a result of the offense;

(4) Whether restitution is ordered or made and the amount of such restitution;

(5) The need to deprive the defendant of illegally obtained gains from the offense;

(6) The expected costs to the government of any imprisonment, supervised, release, or probation component of the sentence; [and]

(7) Whether the defendant can pass on to consumers or other persons the expense of the fine.

18 U.S.C. § 3572(a).

Here, as discussed above, Defendant has the capacity for future earnings through participation in the Bureau of Prison's Inmate Financial Responsibility Program. Although Defendant will be approximately 70 when released from prison, there is nothing to suggest he will not be capable of some form of employment at that time. Defendant has no dependents.

Although Defendant's production victims have the right to pursue restitution, and several note the need for counseling in relation to Defendant's crimes, none are requesting restitution. This is a windfall for Defendant. Were they to do so, the amount requested and ordered could easily exceed $3,000 per person, or $42,000. *See* PSR ¶ 45. According to the terms of the Plea Agreement, all of Defendant's

child pornography victims December 7, 2018, forward, are entitled to restitution. ECF No. 138 at 13. However, because the National Center for Missing and Exploited Children only reviewed a sample of 234 files, of which 100 were recognized, of which 14 Series were identified, the result is only <u>two</u> requests for restitution, totaling $15,000. This is another windfall for Defendant, especially considering the sum of his child pornography collection was well over 30,000 images. PSR ¶ 43. Thus, the victims requesting restitution in this case are a fraction of the total number of victims harmed by Defendant's 11 years of downloading, viewing, distributing, and creating child pornography. It is appropriate that Defendant contribute to the AVAA fund benefiting victims premised on "aggregate causation" of their "anguish." AVAA, PL 115-299, December 7, 2018, 132 Stat 4383.

If Defendant was subject to a greater restitution order, that would be a § 3572 factor weighing against imposition of an AVAA assessment. 18 U.S.C. § 3572(a)(4). Instead, however, the government is balancing its request of a $28,000 AVAA assessment, with the $15,000 restitution request and imposition of the JVTA assessment. The government notes that $28,000 is equivalent to an award of $2,000 per identified production related victim in Defendant's case. If the 14 Series victims were included, an order of $28,000 would equal $1,000 per victim. $1,000 covers a paltry amount of treatment hours for victims of sexual exploitation; however, for

victims in need, victims seeking help from the AVAA fund, that money can help facilitate healing.

Again, Defendant would be able to pay $25 per quarter through the IFRP during his period of incarceration towards any assessment. Even if no IFRP earnings are contributed, Defendant could make payments while on supervised release, without unreasonably burdening Defendant. If the Court imposes both an AVAA assessment and a JVTA assessment, Defendant's payments would go first to the AVAA assessment. 18 U.S.C. § 2259A(d)(2).

## CONCLUSION

Application of 18 U.S.C. § 3553 supports a sentence of 23 years, followed by a life term of supervised release for Defendant's commission of the crime of attempted production of child pornography. The government submits that such a sentence is sufficient, but not greater than necessary, to accomplish the goals of sentencing, and that a lesser sentence is not supported by application of the 18 U.S.C. § 3553(a) factors.

Respectfully submitted: December 23, 2021.

Vanessa R. Waldref
United States Attorney

*s/ Ann T. Wick*
Ann T. Wick
Assistant United States Attorney

Gov.'s Sentencing Memorandum – 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I hereby certify that on December 23, 2021, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system which will send

notification of such filing to defense counsel of record.

*s/ Ann T. Wick*
Ann T. Wick
Assistant United States Attorney
